## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| SHARONE GOODWIN, #191831 | : |
| Plaintiff, | : |
| vs. | :CIVIL ACTION 15-0417-WS-N |
| WILLIAM DESPAIN, *et al.*, | : |
| Defendants. | : |

### REPORT AND RECOMMENDATION

Plaintiff Sharone Goodwin, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.[1]  This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R).  After careful review, it is recommended that Summary Judgment be **GRANTED** in favor of Defendants Walter Myers, Terry Raybon, and William DeSpain, and that Plaintiff Sharone Goodwin's action be **DISMISSED** with prejudice in its

---

[1]    Plaintiff's initial complaint was docket by the Court on August 14, 2015.  (Doc. 1).  Plaintiff, however, filed an amended complaint which was reviewed by the Court pursuant to 28 U.S.C. § 1915(e)(2)(B).  (Doc. 4).  The screening revealed that Plaintiff's amended complaint included numerous, unrelated matters, and the Court ordered Plaintiff to file a second amended complaint on this Court's complaint form for a § 1983 actions that "contain[ed] only one claim and any claims that [were] closely related to it."  (*See* Doc. 11).  Plaintiff filed a second amended complaint, but it failed to comply with the Court's ordered instructions.  (Doc. 12).  Consequently, the Court granted Plaintiff leave to file a third amended complaint for correcting the identified deficiencies.  (Docs. 14, 19).  Plaintiff's third amended complaint again contained more than one claim, and Plaintiff was warned that his failure to comply with the Court's order would result in a recommendation for dismissal of the action for that reason.  (Doc. 21).  Plaintiff's fourth amended complaint was docketed on March 16, 2017 and is the considered the operative complaint of this action.  (Doc. 22).

entirety.

It is further **ORDERED** that Plaintiff's Amended Motion for Production of Documents (Doc. 48) is **DENIED** for the reasons as set out in the Court's previous order, dated January 24, 2018 (Doc. 47).

## I.    Summary of Allegations and Background.

Plaintiff Sharone Goodwin brings this suit alleging multiple due process and Eighth Amendment violations occurring while housed at Holman Correctional Facility.  (Doc. 22).  According to Plaintiff, the defendants, on numerous occasions, failed to protect him from inmate attacks and held him in segregated housing without the proper hearings.  (*Id.*).

Plaintiff claims that on May 15, 2015, five inmates attacked him outside of the dining hall.  (*Id.* at 4).  One inmate attempted to stab Plaintiff in the eye (causing his glasses to shatter) and then the five inmates "escorted" Plaintiff to the shift office and warned him "to get out of population."  (*Id.*).  Plaintiff entered the shift office and reported the incident to Lieutenant Brown, who instructed that Plaintiff be taken to the medical unit, where Plaintiff alleges he received treatment for "Plexiglas in his left eye." (*Id.*).  Plaintiff subsequently reported the incident (and identified the attackers by their names and nicknames) to Wardens Myers and Raybon; yet, the wardens failed to take action against the inmate attackers.  (*Id.* at 4-5). Plaintiff further alleges that Classification Supervisor William DeSpain is responsible for the attack because of his "error of accepting [Plaintiff] to

Homan Correctional Facility from St. Clair without insuring that he had no validated enemies" at the prison. (*Id.* at 5).

After the attack, Wardens Myers and Raybon moved Plaintiff to segregated housing in Q-side and told Plaintiff that he would be transferred to another prison after Classification Supervisor DeSpain identified a known enemy or life threat. (Doc. 22 at 5). According to Plaintiff, the wardens further arranged for Plaintiff to meet with the Montgomery Gang Taskforce ("the Taskforce"), who interviewed Plaintiff, took photographs of Plaintiff, and recorded his statement on video. (*Id.*; Doc. 48 at 3). Plaintiff informed the Taskforce that the May 15, 2015 attack was "a hit on his life and [that] he doesn't feel safe at Holman." (*Id.*; Doc. 37 at 1). Plaintiff claims that Defendants have knowledge of this interview and the "hit on his life" and, yet, failed to transfer him or take action to protect him. (Doc. 22 at 5). Additionally, Plaintiff challenges that the segregation detention paperwork presented to him on May 15, 2015, stated that his segregation holding was for "being in an altercation with unknown inmates", despite that he informed the defendants of the names of his attackers. (*Id.*).

Around June of 2015, Warden Myers moved Plaintiff from Q-side segregation to "the main lockup unit" or "segregation annex", where Plaintiff alleges inmates as well as officers are "cut on an almost daily basis." (*Id.*; Doc. 48 at 2). While housed in segregation annex, Plaintiff contends he was assaulted twice in June of 2015, "several more times" in August and

September of 2015, and again on April 1, 2016. (*Id.* at 5-6). Plaintiff asserts that he was afraid for his life while incarcerated at Holman and alleges he communicated this fear to the Segregation Review Board, which included Warden Myers and Classification Supervisor DeSpain, weekly. (*Id.* at 6). Yet, Defendants did nothing. (*Id.*).

Despite oral and written requests (by Plaintiff and by his family members) to be transferred, Plaintiff remained held in segregation until June 11, 2016, when he was moved to Limestone Correctional Facility. (*Id.* at 6-7). Plaintiff claims his holding in segregated custody without a hearing for administrative custody and the failure to transfer Plaintiff to an enemy free prison violated his Eighth Amendment and Fourteenth Amendment rights. (*Id.*). Plaintiff is suing Defendants William DeSpain, Walter Myers,[2] and Terry Raybon for these alleged constitutional violations and is seeking monetary relief in the amount of $50,000.00 from each defendant for compensatory and punitive damages and any other relief to which this Court finds he is entitled.[3] (Doc. 22 at 10).

---

[2]    Defendant Myers affirms that he was transferred from Holman Correctional Facility in December of 2015 and has no knowledge of the incidents complained of which occurred after that date, *i.e.*, Plaintiff's continued holding in segregation and the April 1, 2016 attack. (Doc. 35-1 at 2).
        Given that the undersigned determines there to be insufficient evidence to establish a constitutional claim against any defendant, the undersigned will not distinguish the acts occurring prior to and after December 2015 in this report.

[3]    In addition to the monetary relief sought, Plaintiff requests declaratory and injunctive relief requiring Defendants to admit they violated his constitutional rights and to release him from punitive segregation. (*Id.*). Plaintiff complains about events which occurred at Holman Correctional Facility, where he was incarcerated at the time he filed this suit. During the pendency of this action, however, Plaintiff was transferred to

Defendants have answered the suit, have denied all allegations against them, and asserted the immunity defenses of sovereign and qualified immunity.[4]  (Doc. 33).  Defendants have also submitted a Special Report, which includes evidentiary support in the form of affidavits, medical records, and various prison records.  (*Id.*; Doc. 35).  The Court converted these pleadings into a Motion for Summary Judgment (Docs. 34, 36), to which Plaintiff responded by filing a combined Motion for Extension of Time to Respond and a Motion for Production of Documents (Doc. 37), followed by an Amended Motion for Production of Documents (Doc. 41), a Motion to Compel

---

Limestone Correctional Facility and then to Easterling Correctional Facility, where he is currently incarcerated.  The transfer or release of a prisoner renders moot claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  As it is clear from the pleadings and records before the court that Plaintiff is no longer housed at Holman Correctional Facility, his requests for injunctive and/or declaratory relief against the named defendants have been rendered moot and they are due to be dismissed on this basis.  *See Steffel v. Thompson*, 415 U.S. 452, 459 n. 10, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.").

[4]      It is unclear whether or not Plaintiff is suing the defendants in their official or individual capacities.  As state officers, however, Defendants Myers, Raybon, and DeSpain are absolutely immune from suit for damages in their official capacities. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  In addition, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). However, having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565.

Discovery (Doc. 45), and a Motion to Hold Defendants in Civil Contempt. (Doc. 46).

The Court granted Plaintiff's request for an extension of time to respond to the Motion for Summary Judgment (Doc. 40) and ordered the defendants to respond to Plaintiff's Motion for Production of Documents, which requested the transcription of the May 15, 2015 interview of Plaintiff conducted by the Department of Corrections Gang Taskforce. (Doc. 38). Defendants objected to production of statements contained in the investigative report (Doc. 39), and the Court denied Plaintiff's motion. (Doc. 47). Based on Defendants' response, the Court determined that no transcription existed of the videotaped statement and that Plaintiff, being aware of what he told prison authorities in the statement, could respond to the motion for summary judgment with his own testimony about any statements he made to the Taskforce, and Defendants were not required to provide him with a copy of the video tape of the statement. (Doc. 47 at 2). This same reasoning was used by the Court to deny Plaintiff's Amended Motion for Production of Documents. (*See* Doc. 47 at 2-3). Additionally, the Court denied Plaintiff's Motion to Hold Defendants in Civil contempt. (*Id*. at 4).

In its January 24, 2018 order, the Court declared "that discovery in this matter has CLOSED" (Doc. 47), yet Plaintiff filed an Amended Motion for Production of Documents requesting an updated version of the Alabama

Department of Corrections standard operating manual, all documents related to his protective custody placement from May 15, 2015 through April 1, 2016, internal memos regarding his removal from cell Q-15 to segregation annex, and all transcribed statements in the possession of the investigative department created on May 15, 2015, as well as statements regarding Plaintiff's 2007 emergency transfer from Homan Correctional Facility. (Doc. 48). Relying on the reasoning of its previous order, The Court hereby denies Plaintiff's Amended Motion for Production of Documents. (Doc. 48). The Court will, however, consider Plaintiff's affidavit attached to the Amended Motion for Production of Documents as a response to Defendants' Motion for Summary Judgment. (Doc. 48 at 3-6).

After a thorough review of the record, the Court determines this motion is ripe for consideration.

## I.   Summary Judgment Standard.

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[5]; *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91

---

[5]   Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment[, however,] remains unchanged. . . . The amendments [have] not affect[ed] continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.

L. Ed. 2d 265 (1986); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (2009)

("[S]ummary judgment is appropriate even if 'some alleged factual dispute'

between the parties remains, so long as there is 'no genuine issue of material

fact.'"(emphasis omitted)).

The party asking for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of the 'pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,'

which it believes demonstrate the absence of a genuine issue of material

fact." *Celotex*, 477 U.S. at 323.  The movant can meet this burden by

presenting evidence showing there is no dispute of material fact, or by

showing, or pointing out to, the district court that the nonmoving party has

failed to present evidence in support of some element of its case on which it

bears the ultimate burden of proof.  *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires
> the nonmoving party to go beyond the pleadings and by [its] own
> affidavits, or by the 'depositions, answers to interrogatories, and
> admissions on file,' designate 'specific facts showing that there is
> a genuine issue for trial.'"  *Id*. at 324.  To avoid summary
> judgment, the nonmoving party "must do more than show that
> there is some metaphysical doubt as to the material facts."
> *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574,
> 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand,
> the evidence of the nonmovant must be believed and all
> justifiable inferences must be drawn in its favor. *See Anderson*,
> 477 U.S. at 255.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc*., 926 F. Supp. 2d 1286,

1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts.  A genuine dispute requires more than "some metaphysical doubt as to material facts." *Garczynski*, 573 F.3d at 1165 (internal citations omitted).   A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment.  *Id*.  In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations." (citations omitted) (unpublished)).[6]

## II.   Discussion.

To state a claim for relief under § 1983, a plaintiff must allege an act

---

[6]    "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority."  11th Cir. R. 36-2.

which deprived him of a right, privilege, or immunity protected by the
Constitution or laws of the United States, committed by a person acting
under color of state law at the time the complaint arose. *Richardson v.
Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).  The defendants in this action,
employed as state correctional officers, were no doubt acting under color of
state law at the time the complaint arose, and Plaintiff brings his claims
pursuant to the Eighth and Fourteenth Amendments.  As such, the
undersigned will review each claim in turn.

### a.  Failure to Protect.

The Eighth Amendment imposes a duty on prison officials to take
reasonable measures to guarantee the safety of the inmates." *Caldwell v.
Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting
*Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811
(1994)) (alterations and quotations omitted).  "It is not, however, every injury
suffered by one prisoner at the hands of another that translates into
constitutional liability for prison officials responsible for the victim's safety."
*Farmer*, 511 U.S. at 834; *Purcell v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th
Cir. 2005) ("[A] prison custodian is not the guarantor of a prisoner's safety.")
(quotation omitted). To survive this motion, Plaintiff must establish facts
necessary to show defendants "disregarded [a] substantial risk by failing to
act in an objectively reasonable way to alleviate the risk," and that the
defendants "'acted with a state of mind that constituted deliberate

indifference.'" *Estate of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 767 (11th Cir. 2016)(citations omitted).

> In this context, deliberate indifference requires: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that amounts to more than mere negligence. *[Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010)]; *see also Ray v. Foltz*, 370 F.3d 1079, 1083 (11th Cir. 2004) ("Deliberate indifference is not the same thing as negligence or carelessness."). Thus, a prison official may have subjective knowledge only if he had both knowledge of specific facts from which an inference of risk of serious harm could be drawn, and he actually drew that inference. *Carter[ v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)]. And, therefore, a plaintiff's claim will fail as a matter of law in the absence of actual knowledge of the substantial risk, because to hold otherwise would impermissibly vitiate the subjective component of the analysis. *See Farmer*, 511 U.S. at 837-38.

*Id.* Taking as true, for purposes of this motion, Plaintiff's version of the facts alleged in the complaint, the undersigned determines that Plaintiff has failed to carry his burden of establishing a constitutional claim.

### i. Transfer to Holman.

Plaintiff alleges that Defendants failed to protect him from being attacked while incarcerated at Holman Correctional Facility because they allowed him to be incarcerated with known enemies at the prison. Specifically, Plaintiff claims that Defendant DeSpain violated his constitutional rights by allowing him to be transferred to Holman Correctional Facility in August of 2013 when Plaintiff had documented enemies housed at the prison.

To the extent that Plaintiff's claim asserts a challenge to his transfer

to Holman Correctional Facility ("Holman"), the law is well-settled that prisoners do not have a constitutional right to remain or be housed in any particular prison or region or to be transferred to a penal institution of their choosing.  *See Meachum v. Fano,* 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976) ("The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution."); *Olim v. Wakinekona,* 461 U.S. 238, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983) (holding that transferring a prisoner from a Hawaii state prison to a California prison did not implicate a liberty interest protected by the Due Process Clause).  Thus, the fact that Plaintiff was transferred from one correctional institution within the State of Alabama to another fails to implicate any constitutional right to which he is entitled.

To the extent that Plaintiff asserts an Eighth Amendment claim for Defendants' failure to protect him based on his transfer from St. Clair Correctional Facility to Holman, Plaintiff also fails to establish a constitutional claim.  Defendant DeSpain affirms that, in accordance with the Alabama Department of Corrections' quarterly segregation rotation of inmates housed in administrative segregation, Plaintiff was transferred to Holman from St. Clair Correctional Facility on August 22, 2013.  (Doc. 33-1 at 1).  At the time of the transfer, Plaintiff was classified as a Security Level 5 inmate and had documented enemies at multiple facilities, including St.

Clair Correctional Facility, Donaldson Correctional Facility, and Holman Correctional Facility. (*Id*.). Due to Plaintiff's inability to live in general population and in order to keep him safe from known enemies, Plaintiff was placed in a single cell housing in the Homan Segregation Unit upon arrival at Homan. (*Id*. at 2).

The record shows that Plaintiff attempted multiple times during his incarceration at Holman to have the status of documented enemies changed and declared instead that they were persons with whom he could live peaceably; these requests, however, were consistently denied, mostly due to Plaintiff's confirmed status as a former FBI informant. (Doc. 33-5 at 12-14; Doc. 33-6 at 18-22; Doc. 48 at 4). It was not until validated enemies were removed from general population that Plaintiff was assigned to population; this housing classification however was short lived. (Doc. 33-2 at 1). The evidence before the Court shows that on January 3, 2014, Plaintiff executed a document acknowledging that he could and wanted to enter general population (Doc. 33-6 at 37), but Plaintiff was transferred back to segregated housing on January 17, 2015, in response to his request to be removed from population due to an inability to live peaceably in population. (Doc. 35-1 at 4).

It is undisputed by that at no time was Plaintiff housed with or in contact with a validated enemy while incarcerated at Holman. (Doc. 33-1 at 2). Additionally, Plaintiff fails to allege that he was ever attacked,

threatened, or even came into contact with one of his documented enemies while at Holman Correctional Facility.  Consequently, the undersigned concludes at no time did Defendants know of a threat or risk to Plaintiff's health or safety and disregard that risk.  Instead, the record shows that Defendants were aware of enemies and their potential harm to Plaintiff, and Defendants acted reasonably in housing Plaintiff in segregation away from the risk of serious, known harm.  *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) (Prison officials must "take reasonable measures to guarantee the safety of inmates."); *Farmer*, 511 U.S. at 844) ("the official may escape liability for known risks if '[he] responded reasonably to the risk, even if the harm ultimately was not averted'"); *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citing *Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1100 (11th Cir. 2014) (specifying that, as to the objective component, the plaintiff must demonstrate that, having subjective knowledge of the risk, a defendant failed to reasonably respond to it)).

Therefore, it is recommended that summary judgment be granted in favor of Defendants as to this claim.

### ii.   May 15, 2015.

As to Plaintiff's claim that Defendants failed to protect him from being attacked on May 15, 2015, there is simply no probative evidence sufficient to

show deliberate indifference of "an objectively substantial serious risk of
harm" posed by any inmate to Plaintiff prior to the attack on May 15, 2015.
*Cf., McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991), *overruled in part
on other grounds by Farmer*, 511 U.S. at 828 (A plaintiff "normally proves
actual knowledge of impending harm by showing that he complained to
prison officials about a specific threat to his safety.").

   Plaintiff presents no evidence that he was aware or fearful of a
possible attack at the time it occurred, much less that he communicated an
actual threat to any defendant or prison official.  Additionally, Plaintiff has
failed to show Defendants "had subjective knowledge of a generalized,
substantial risk of serious harm from inmate violence."  *Hale v. Tallapoosa
Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995) (production of evidence that
inmate-on-inmate violence is rampant can establish that defendants knew of
a substantial risk of harm) (citing *LaMarca v. Turner,* 995 F.2d 1526, 1535
(11th Cir. 1993) (explaining that "unjustified constant and unreasonable
exposure to violence" violates Eighth Amendment) and *Zatler v. Wainwright,*
802 F.2d 397, 400 (11th Cir 1986) (stating that inmate has constitutional
right to protection from constant threat of physical assault from inmates)).
The record before the Court is void of facts proving or indicating any
subjective knowledge or recklessness on the part of Defendants, and it is
incumbent on Plaintiff to make such an evidentiary showing that a defendant
drew the inference and "knowingly or recklessly 'disregard[ed the] risk [of

harm] by failing to take reasonable measures to abate it,'" *Hale*, 50 F.3d at 1583 (quoting *Farmer*, 511 U.S. at 848, 114 S. Ct. at 1984), as "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983. . . . The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (citations and internal quotations omitted), 496 U.S. 928, 110 S. Ct. 2624, 110 L. Ed. 2d 645 (1990).   Accordingly, Plaintiff's failure to protect claim is not actionable under § 1983, and it is recommended that summary judgment be granted in favor of Defendants on this claim.

### iii.  Transfer to Lock-up.

Plaintiff contends that Defendant Myers is liable for failing to protect him by moving him from segregation, Q-side, to the segregation annex unit.[7] (Doc. 48 at 4).  In order for Plaintiff to meet his burden on his failure to protect claim, Plaintiff must establish under the objective prong that the condition of which he complains is "harmful enough" to violate the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).  The conditions under which Plaintiff was incarcerated must present "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  "[A]n

---

[7]      The record evidences that Plaintiff was placed on Q-side segregation following the May 15, 2015 assault, pending investigation of the incident.  (Doc. 22 at 5).  Plaintiff submits that he identified the names of his attackers to the defendants, but Defendant Myers affirms that when Plaintiff was questioned regarding the attack, Plaintiff "failed to state what happened to cause his injuries."  (Doc. 35-1 at 1).  Defendant Myers further affirms, and Plaintiff does not dispute, that Plaintiff admitted he was a known gang member and used his gang affiliation to cause problems within the prison system.  (*Id.*).

excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm . . . . And confinement in a prison where violence and terror reign is actionable." *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005).  However, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment." *Id.*

In support of proving that the conditions of confinement in the segregation annex created a substantial risk of serious harm, Plaintiff offers his sole conclusory allegation that "inmates [are] stabbed on the segregation annex walk yard, as well as segregation runners mov[e] freely without supervision."  (Doc. 48 at 4; Doc. 22 at 5).  Notably, Plaintiff fails to establish a history of widespread violence by providing a description of where, when, and how alleged attacks occur to demonstrate a pattern of which the defendants should be aware.  Moreover, Plaintiff provides no details indicating understaffing, specific showings of attacks by runners (other than his own alleged assault), or inadequate safety procedures within the unit. *But cf., Hale,* 50 F.3d at 1583 ("Hale produced evidence that inmate-on-inmate violence occurred regularly in the two years preceding his attack.). Therefore, Plaintiff has failed to satisfy the objective element of his Eighth Amendment claim.

Assuming, *arguendo*, that Plaintiff did satisfy the objective element of his claim, he must also show that Defendant Myers was deliberately

indifferent to the risk of serious harm to him.  To meet this element, Plaintiff must show Defendant Myers actually knew that a substantial risk of harm existed, and "knowingly or recklessly" declined to take action to prevent the harm.  *LaMarca*, 995 F.2d at 1535-38 ("Mere knowledge of the infirm conditions . . . does not establish deliberate indifference.").  Whether or not a prison official had the requisite knowledge of a substantial risk of harm is a question of fact, which may be demonstrated by a showing that the risk was obvious.  *Farmer*, 511 U.S. at 1981-1982.

Plaintiff alleges that Defendant Myers was aware of a "hit" on Plaintiff's life and therefore had knowledge that Plaintiff was in danger of harm.  (Doc. 48 at 4; Doc. 22 at 5).  Plaintiff explains that following the May 15, 2015 attack Plaintiff informed the investigating Taskforce that there was a hit on his life.  Defendant Myers, however, denies having knowledge of a hit on Plaintiff's life (Doc. 33-3; 33-5 at 1), and Plaintiff fails to establish that Defendant Myers possessed the subjective knowledge of the hit, of the report, or of any actual threat of harm to Plaintiff.  Specifically, the record is devoid of the identify any inmate who has threatened Plaintiff, nor the name of any gang who intends Plaintiff harm, a reasoning for a "hit", or even serious injuries from any previous attacks that would indicate Plaintiff was in grave danger or at a substantial risk of serious harm.  Instead, the record is clear that no known enemies were housed with Plaintiff in the segregation unit, no specific threat of harm was made to Plaintiff before or while he was placed in

segregation annex housing, and no evidence exists of rampant attacks in segregation annex.  Consequently, Plaintiff has failed to establish Defendants had subjective knowledge of a serious risk of harm to him, and a conclusory assertion of violence is insufficient to put the officials on notice of an ongoing constitutional deprivation.  *See Estelle*, 429 U.S. at 105-06 (Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended "evolving standard of decency."). Furthermore, Plaintiff does not allege any facts that would establish that there was a history of failure to protect inmates at Holman that was "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S. Ct. 2056, 114 L. Ed. 2d 461 (1991); *see also Doe v. School Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (Plaintiff's conclusory assertion of a "history of widespread abuse" was insufficient to put the defendant on notice of an ongoing constitutional deprivation.).  Thus, Plaintiff fails to carry his burden of showing that at the time he was transferred to segregation annex Defendant Myers had any knowledge of a threat of harm to Plaintiff or that the conditions of the unit were so violent as to inherently be an excessive risk of harm to Plaintiff.

Therefore, the undersigned concludes that summary judgment should be granted in favor of Defendant Myers on this issue, and Plaintiff's claim be dismissed.

### iv.  Assaults in Lockup.

Plaintiff further asserts that while housed in the segregation annex unit he was attacked twice in June of 2015, several more times in August and September of 2015, and again on April 1, 2016.  (Doc. 22 at 5-6).  Plaintiff contends that Defendants had knowledge of the attacks and acted with deliberate indifference by continuing to house him in segregation annex. (*Id.*).  Although Plaintiff provides absolutely no details regarding the June-September 2015 assaults, he maintains body charts exist to evidence each and further claims he informed the defendants of the names of the attackers, and they did nothing.  (*Id.*).

The record before the Court reveals that on June 4, 2015, Plaintiff informed the nurse, "I'm stressed out and feel like I'm in danger."  (Doc. 33-16 at 5).  On June 11, 2015, Plaintiff was examined in the health care unit with the complaint that he had been assaulted.[8]  (Doc. 33-16 at 10).  The body chart notes that there is "redness" seen to Plaintiff's right shoulder/neck, small red areas were observed on both arms, and Plaintiff stated his left hand was numb.  (*Id.*).  There was no bleeding or acute distress noted and no

---

[8]     Defendants argue that Plaintiff's assault claim is unsubstantiated and contend that on June 11, 2015 Plaintiff received medical care after force was used against him by Officer Madison following Plaintiff's failure to obey the officer's orders.  (Doc. 35 at 9). The record indicates that while use of force was utilized for Plaintiff' failure to obey an officer's direct order, a reading of the incident report and an examination of the time stamps on the prison documents show that Plaintiff was examined in the medical unit for complaints of an assault, then upon his escort back to his cell from the medical unit, Plaintiff refused Officer Madison's orders to enter his cell.  It was then that force was used on Plaintiff and Plaintiff returned to the medical unit to be examined.  (Doc. 33-8 at 1).

medical treatment was necessary.  (*Id.*).  On June 18, 2015, Plaintiff was again seen in the health care unit and stated, "the runner stabbed me."  (*Id.* at 12).  The evaluating nurse noted a half (1/2) centimeter superficial laceration to the right side of Plaintiff's upper lip and no other injuries were observed.  (*Id.*).  On June 24, 2015, Plaintiff was placed in a crisis cell on suicide watch after informing officials he was homicidal and suicidal.  (Doc. 33-8 at 9).  The body charts and incident reports dated from July through September of 2015 evidence suicide attempts and use of force against Plaintiff for his failure to obey the direct orders of officers.  (*See* Doc. 33-9 at 2-17; Doc. 33-10 at 1-5; Doc. 33-11 at 1-10; Doc. 33-12 at 1-3; Doc. 33-13 at 2-10; Doc. 33-14; Doc. 33-15; Doc. 33-16 at 15, 20-23).  The record shows that on April 1, 2016 Plaintiff received a body chart where he stated to the nurse, "I got cut," and the nurse observed superficial lacerations to Plaintiff's body: three (4 cm) lacerations to his left arm, one (1/2 cm) laceration to a finger on his right hand, and one laceration to his right heel.  (Doc. 33-16 at 26).

After a thorough review of the record, the Court, for purposes of this motion, accepts Plaintiff's version of the facts that he was assaulted twice in June of 2015 and on April 1, 2016; however, the record belies the allegations that he was "assaulted" in August or September of 2015.  *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) (At the summary judgment stage of this action, the Court will construe the facts in the light most favorable to the nonmovant, Plaintiff.); *see also Scott v. Harris,*

550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").  In order to overcome this motion for summary judgment, Plaintiff bears the burden of establishing both the objective and subjective elements of his claim.  Thus, Plaintiff must show that either he faced an actual threat of harm or that the living conditions within the facility constituted cruel and unusual punishment because they involved or resulted in "wanton and unnecessary infliction of pain, [or] . . . [were] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

As previously discussed, Plaintiff provides no facts demonstrating that the living conditions of his housing unit constituted a substantial risk of harm to him - such as, a showing of inmate-on-inmate violence, understaffing, inadequate procedures to ensure safety, or overcrowding.  *See Morgan v. Davenport,* CA No. 10-00665-KD-N, 2012 WL 426729, at *6 (S.D. Ala. Jan. 19, 2012) (citing *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.,* 400 F.3d 1313, 1321 (11th Cir. 2003)); *but cf., LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993) (Eighth Amendment violation found for failing to protect prisoner where the plaintiff established an absence of adequate

supervision despite a substantial risk of serious harm from inmate-on-inmate violence); *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579 (11th Cir. 1995) (same); *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003) (Eighth Amendment violation established where the defendants knew of a violent inmate who posed a substantial risk of serious harm and failed to adequately supervise the inmate).  As such, the most persuasive factor in favor of Plaintiff rests in the unfortunate circumstance that he was attacked twice in approximately one week in June of 2015.  Arguably, the June 11, 2015 attack could serve as notice to Defendants that Plaintiff was at a substantial risk of serious harm and this appears to be what Plaintiff attempts to argue.  However, in the present case, Plaintiff's attacks cannot be said to rise to an objectively serious level as to provide subjective knowledge of a risk of harm to Plaintiff.  This is not to say that the Court agrees with Defendants' argument that Plaintiff's injuries are *de minimus* and thus preclude success on a failure to protect claim. (Doc. 35 at 6).  Instead, the undersigned finds the minor nature of the injuries, without any details regarding the attacks or allegations of any threats accompanying the attacks, cannot be viewed as objectively serious.

A review of the medical records and Plaintiff's allegations show merely that Plaintiff was examined on June 11, 2015 claiming to have been attacked but suffering only redness to his shoulder and arms.  (*See* Doc. 33-16 at 10).  Such minor markings, without more (*i.e.*, verbal threats), can hardly be considered severe enough to place Defendants on notice that Plaintiff faced a

substantial risk of serious harm or even that another assault was likely. Similarly, the single injury from the June 18, 2015 attack was a "half-centimeter superficial laceration" above Plaintiff's lip. (*Id.* at 12). Additionally, Plaintiff fails to provide the Court with a description of the incident to demonstrate a serious risk of harm persisted. Considering the Plaintiff's evidence is a scintilla, the Court finds that a reasonable jury would not be able to return a verdict for Plaintiff on the element that a substantial risk of serious harm existed at the time either assault occurred.

Likewise, no evidence exists that Plaintiff was at an objective risk of harm at the time of the April 1, 2016 attack.[9]  Plaintiff alleges in his complaint that on April 1, 2016 an unsupervised inmate (who was out of his cell) attacked him with a knife and broom. (Doc. 22 at 6). He contends that the inmate "tricked the cubical officer" into believing that Plaintiff needed medical attention and seized the opportunity to attack Plaintiff when Officers Boudreaux and Raines escorted Plaintiff to the health care unit. (*Id.*). Plaintiff claims he suffered cuts to his arm and leg from the attack (which is corroborated by the medical records) and claims Officer Raines was injured.

---

[9]   Defendants argue that Plaintiff's claim of an April 1, 2016 attack is unsubstantiated and further challenge that Plaintiff was cut by inmate Darron Williams, who Plaintiff originally identified as his attacker. (Doc. 35 at 9-10). According to Defendants, prison records do not indicate a prisoner by the name of Darron "Williams" was incarcerated at Holman on April 1, 2016. (Doc. 35 at 9-10). In response to Defendants' denial of the attack, Plaintiff submits that the inmate attacker was in fact Darron Matthews and affirms that the attack was witnessed by several officers, that Officer Boudreaux hid the weapon used, and that documents exist regarding the incident but were not produced by Defendants due to Plaintiff's inadvertent mistake in producing the correct last name of the attacker. (Doc. 48 at 4).

(*Id.*).  The record before the Court shows that approximately ten (10) months had passed since Plaintiff had been seen in the medical unit with complaints of an assault.  Plaintiff makes no allegations that he had received threats of harm prior to the attack.  And, officers were standing alongside Plaintiff and assisted in protecting him (to the extent of being injured themselves) from the attack.  Therefore, no reasonable jury could find that Plaintiff was at an objectively substantial risk of harm on April 1, 2016.  Consequently, Plaintiff has failed to establish the first element of an Eighth Amendment claim that serious harm existed when he was attacked while housed in segregation annex.

Plaintiff has also failed to show Defendants were deliberately indifferent to a substantial risk of serious harm that he would be attacked or injured.

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear felt by [the] [p]laintiff." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also draw that inference." *Id.* at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

The record is void of allegations that Plaintiff communicated a specific

threat of harm to Defendants or any prison staff member - or even that he internally feared harm from a specific inmate or group of inmates.  The law is clear that "before a defendant's awareness rises to a sufficient level of culpability, there must be much more than mere awareness" of a problem. *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003); *see Prater v. Dahm*, 89 F.3d 538 (8th Cir. 1996) (Plaintiff did not allege facts from which an inference of substantial risk of harm could be made; plaintiff alleged only that fellow inmate had made threats against him); *Pickett v. Hart*, No. 7:07-CV-98(HL), 2010 U.S. Dist. LEXIS 26460, 2010 WL 1224024 (M.D. Ga. Jan. 27, 2010) (Defendants had no subjective knowledge of a threat of harm against plaintiff, and did not act in deliberate indifference to plaintiff's situation.); *McBride v. Rivers*, 170 F. App'x 648, (11th Cir. 2006) (Plaintiff's statement to officer that, "me and that dude had problems. I'm in fear for my life. Don't put me in a cell with him" was insufficient to put defendant on notice of a serious risk of harm because Plaintiff failed to "identify a specific prior incident, from which the defendant could infer that a substantial risk existed.").

It is incumbent on Plaintiff to make an additional evidentiary showing that a defendant drew the inference and "knowingly or recklessly 'disregard[ed the] risk by failing to take reasonable measures to abate it.'" *Hale,* 50 F.3d at 1583 (quoting *Farmer,* 511 U.S. at 848, 114 S. Ct. at 1984). However, "[m]erely negligent failure to protect an inmate from attack does

not justify liability under § 1983. . . . The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir.) (citations and internal quotations omitted), *cert. denied,* 496 U.S. 928, 110 S. Ct. 2624, 110 L. Ed. 2d 645 (1990).  Plaintiff's allegation that he weekly told Defendants he was fearful in segregation custody is insufficient evidence to put Defendants on notice of an actual risk of serious harm.  *See Carter*, 352 F.3d 1346 (officials' generalized awareness that someone is "a 'problem inmate' with a well-documented history of prison disobedience and [is] prone to violence" is not enough to show their subjective awareness that the inmate poses a substantial risk of serious harm to his cellmate.); *Compare Brooks v. Powell*, 800 F.3d 1295 (11th Cir. 2015)(threats of physical and sexual harm were insufficient to establish subjective knowledge of serious harm where plaintiff and attacker were housed in separate segregation cells and attacked occurred due to unforeseen and inadvertent simultaneous cell door opening ); *Bugge v. Roberts*, 430 F. App'x 753 (11th Cir. 2011) (official's knowledge that there would be "trouble" if plaintiff and inmate were not kept away from each and requests for protective custody were insufficient to establish subjective knowledge of risk of serious harm), *with Rodriguez v. Sec'y for the Dep't of Corrs*., 508 F.3d 611 (11th Cir. 2007) (Deliberate indifference was found where Plaintiff inmate informed defendant officers of specific details sufficient to establish substantial risk of

serious harm existed: (1) that he was a former Latin King who renounced his gang membership, (2) members of the Latin Kings had threated to kill him in retaliation when he returned to the compound, (3) the compound was heavily populated with Latin Kings, and (4) in order to prevent harm to the plaintiff he needed to be transferred to another institution or placed in protective custody.).

Accordingly, the Court concludes a reasonable jury could not find for Plaintiff on the deliberate indifference element as the evidence is completely lacking in regard to Defendants "knowingly or recklessly" disregarding a risk of harm to Plaintiff.

### b. Lack of Investigations.

Plaintiff complains Defendants failed to investigate his attacks even after he identified the attackers. (Doc. 48 at 5). He also claims Defendants failed to respond to the complaints he made regarding his safety and his perceived need for placement in protective custody. (*Id.*). The alleged lack of investigations, however, fails to state a claim cognizable in this cause of action.

> "It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Okla. City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985). "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). "The law is clear that inmates

> do not enjoy a constitutional right to an investigation of any
> kind by government officials." *Banks v. Annucci*, 48 F. Supp. 3d
> 394, 414 (N.D. N.Y. 2014); *Wilkins v. Ill. Dep't of Corr.*, 2009
> U.S. Dist. LEXIS 56389, 2009 WL 1904414, *9 (S.D. Ill. 2009)
> (recognizing that inmates have no due process right to an
> investigation); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 342 (S.D.
> N.Y. 2003) (holding that prisoners do not have a due process
> right to an investigation of grievances).

*Carey v. Mason*, No. 2:13-CV-884-WHA, 2017 U.S. Dist. LEXIS 962, *37

(M.D. Ala. Jan. 3, 2017).  Based on the foregoing, the Court concludes that

the defendants alleged failure to conduct investigations does not rise to the

level of a constitutional violation and, therefore, provides Plaintiff no basis

for relief.

### c. Administrative Regulation Violations.

In his complaint, Plaintiff references allegations of administrative

regulations that were violated or not followed by Defendants.[10]  It is well

settled in the Eleventh Circuit, infringements of agency rules, regulations or

procedures do not, without more, amount to constitutional violations.

*Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (noting that the

mere fact a governmental agency's regulations or procedures may have been

violated does not, standing alone, raise a constitutional issue); *United States

v. Caceres*, 440 U.S. 741, 751-52, 99 S. Ct. 1465, 59 L. Ed. 2d 733 (1979)

(holding that mere violations of agency regulations do not raise constitutional

---

[10]     Plaintiff contends that Defendants failed to follow the guidelines as set out in the
Alabama Department of Corrections Classification Manual §§ 2.7.1, 4.2.3, 6.5.4.4,
6.7.2.2 regarding enemy verification, prison transfers, and ensuring the health and safety
of inmates.  (Doc. 48 at 3; Doc. 22 at 5, 8).

questions).

Accordingly, Plaintiff's claims that Defendants failed to follow the Alabama Department of Corrections Administrative Regulations in his transfer to Holman and his segregation holding are not actionable pursuant to § 1983.

### d. Segregation Confinement Without a Hearing.

As to Plaintiff's claim that Defendants violated his procedural due process rights by holding him in segregation and denying him a prison transfer[11] or classification hearing, the undersigned finds that Plaintiff has failed to establish an actionable claim.  (Doc. 22 at 8-9; Doc. 48 at 4-5).

Plaintiff claims he was placed in segregation without receiving a formal reclassification hearing.  (Doc. 22 at 5; Doc. 48 at 4-5).  Despite frequent inquiries, Plaintiff further claims the only explanation he received as to why he was being held in segregation came on September 10, 2015 when Defendant Myers told Plaintiff he was "in Lock up because . . . 'the word on the street, is you robbed the Big Man.' And 20 guys ran you to Lock up."  (Doc. 22 at 6).  Plaintiff further alleges that while housed in segregation he was not allowed to visit his family and that his punitive segregation cell had no lights or working toilet.  (Doc. 48 at 4-5).

---

[11]     Plaintiff submitted multiple requests for a lower security level prison transfer. (See Doc. 33-5 at 18, 21-22, 25).  Each request was denied with the explanation that Plaintiff did not possess the requisite "score" to be moved to a lower security level facility.  (*Id*.).   And, as discussed previously at section III.,a., i., Plaintiff has no right to a certain custody level or prison facility. *Meachum v. Fano,* 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976) ("The Constitution does not . . . guarantee that the convicted prisoner will be placed in any particular prison[.]").

i.    **Procedural Due Process.**

The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

> A Section 1983 action alleging a procedural due process violation requires proof of three elements: "deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally-inadequate process." *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994). The Eleventh Circuit Court of Appeals has identified two situations in which a prisoner—already deprived of liberty in the traditional sense—can be further deprived of liberty such that procedural due process protections are required: (1) when there is a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court[ ]"; and (2) when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)).

*Quintanilla v. Bryson*, CA 6:17-cv-4, 2017 U.S. Dist. LEXIS 142221, *7 (S.D. Ga. Aug. 7, 2017). As such, the law is clear; there is no right inherent in the Constitution to be free from confinement in segregation. *Sandin*, 515 U.S. at 478, 487. Therefore, an inmate possesses a liberty interest related to his or her confinement in segregation only if the State has created a liberty interest and deprived him of certain benefits. *Id.* at 478.

In *Sandin*, the Supreme Court compared the conditions of confinement in disciplinary segregation, administrative segregation, which is considered to be a non-disciplinary classification that prevents an inmate's contact with

the general population, and the general population, and found that a prisoner's thirty-day confinement in disciplinary segregation did not implicate a state-created liberty interest because it did not present an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484.  Rejecting the plaintiff's argument that solitary confinement automatically triggered due process protection, the Court noted that even inmates in the general population were confined to their cells for twelve to sixteen hours a day, depending upon their classification.  *Id.* at 486 & n.8.  Therefore, the deprivations endured by the plaintiff in disciplinary segregation were not "atypical" or "significant" and "did not work a major disruption in his environment."  *Id.* at 486.

In the present action, Plaintiff describes only one condition of administrative or disciplinary segregation as compared to the general population conditions at Holman, that is that he was denied visitation with his family.  The law, however, is also well settled on this issue; the Constitution does not grant an inmate a right in visitation privileges. *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); *Overton v. Bazzetta*, 539 U.S. 126, 131, 134, 123 S. Ct. 2162, 2167, 2168, 156 L.Ed.2d 162 (2003) (upholding a two-year restriction on visitation privileges for two substance abuse violations because prison confinement requires the

surrendering of liberties and privileges enjoyed by other citizens, with free association being least compatible right to prison confinement); *Charriez v. Secretary, Fla. Dep't of Corrs.*, 596 F. App'x 890, 894 (11th Cir. 2015) (unpublished) (finding that the one-year loss of visitation privileges did not implicate a state-created liberty interest as no right to unfettered visitation exists); *Walker v. Loman*, 2006 U.S. Dist. LEXIS 83680, 2006 WL 3327663, at *1, *3 (M.D. Ala. 2006) (unpublished) (holding the ninety-day loss of store, telephone, and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest). An inmate's ability to visit (as well as to shop and to use the telephone) is heavily restricted while in prison, as are most aspects of an inmate's life. *Sandin*, 515 U.S. at 485. Such restriction is not "atypical," nor is it a "significant hardship" under the *Sandin* analysis, and is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence. *See Id.* at 475, 485. Thus, Plaintiff does not have a liberty interest in visitation privileges, to which due process attaches.

The extended duration of Plaintiff's segregation confinement does distinguish his facts from *Sandin*, but still falls short of establishing a constitutional violation. *Smith v. Deemer*, 641 F. App'x 865, 868 (11th Cir. 2016) (unpublished) (in order for an atypical and significant hardship to be found, it "must exist for a significant period of time."). *Compare Al-Amin v. Donald*, 165 F. App'x 733, 739 (11th Cir. 2006) (finding that thirty months'

confinement to administrative segregation did not constitute an atypical and significant hardship that would give rise to a liberty interest); *Rodgers v. Singletary*, 142 F.3d 1252, 1252-53 (11th Cir. 1998) (finding the plaintiff was not deprived of a constitutionally protected liberty interest by his placement in administrative segregation for two months); *Morefield v. Smith*, 404 F. App'x 443, 446 (11th Cir. 2010) (finding that a four-year confinement in administrative segregation, although lengthy, did not create a liberty interest considering that the conditions of confinement were similar to those in the general population); *Craig v. Headly*, CA 2:14-cv-00503-LSC, 2017 U.S. Dist. LEXIS 160383 (N.D. Ala. Sept. 29, 2017) (Ten month administrative confinement did not "create a major disruption in his environment"), *with Williams v. Fountain*, 77 F.3d 372, 374 n.3 (11th Cir.) (holding that one year in solitary confinement presented an atypical and significant hardship which resulted in a deprivation of a liberty interest), *cert. denied*, 519 U.S. 952, 117 S. Ct. 367, 136 L. Ed. 2d 257 (1996); *Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004) (holding the harsh conditions in solitary confinement under which he was held for 500 days amounted to an atypical and significant hardship to which due process attached).

An inmate continuously confined in segregated holding must receive "some sort of periodic review of the confinement[.]". *Hale v. Sec'y for Dep't of Corr.*, 345 F. App'x 489, 493 (11th Cir. 2009) (citing *Sheley v. Dugger*, 833 F.2d 1420, 1426 (11th Cir. 1987)). The Supreme Court, in *dicta*, alludes to

the periodic review required:

> Of course, administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner -- which will have been ascertained when determining to confine the inmate to administrative segregation -- and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner.

*Sheley*, 833 F.2d at 1426 (quoting *Hewitt v. Helms*, 459 U.S. 460, 477 n.9, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983).

The record evidences that Plaintiff received substantial review of his segregation confinement. In fact, it is undisputed that the Segregation Review Board made "weekly rounds" accessing the inmate's placement. (Doc. 22 at 6; Doc. 48 at 5) (It is during these weekly assessments that Plaintiff articulated the alleged assaults contained in this action.) Defendants affirm, and Plaintiff concedes, that Plaintiff continued to be housed in segregation for his protection.[12] (Doc. 33-2 at 2; Doc. 33-3 at 1-2; Doc. 48 at 4). Furthermore, the record also shows that during the time period of segregated confinement, Plaintiff was temporarily placed in a single crisis cell twice for

---

[12]   Plaintiff alleges in his complaint that the explanation received for his continued confinement in segregation was that he "robbed the Big Man" and "20 guys ran [him] to lockup." (Doc. 22 at 6). Although Plaintiff apparently articulates the statement to mean he is being housed in segregation as punishment, the undersigned interprets the statement (which Defendant Myers denies making, Doc. 35-1 at 2) as support for the need for protection - if multiple inmates are targeting Plaintiff and warning him to get out of population, it reasons that Plaintiff is not safe housed with them.

his protection after making suicidal statements (Doc. 33-8 at 9; 33-12) and was involved in several incidents resulting in disciplinary charges, namely for failure to obey the direct order of an officer, insubordination or threats, or assault on an officer.[13]   (*See* Docs. 33-8; 33-9; 33-11; 33-12; 33-13; 33-14-; 33-15).  Thus, the record evidences that Plaintiff spent most of his incarceration in segregation at Holman because he refused to live in the general population, because he communicated fear for his safety, and because of disciplinary charges.

Accordingly, the Court finds that the duration and nature of Plaintiff's segregation holding did not give rise to a liberty interest protected by the due process clause. Therefore, Plaintiff's allegations failed to demonstrate a violation of a constitutional right. As a consequence, Plaintiff's segregation confinement claims fail to state a claim upon which relief can be granted and are due to be dismissed with prejudice.

### ii.   Conditions of Confinement.

---

[13]      Plaintiff was sentenced to 20 days disciplinary segregation for failing to obey an officer's order to get on the elevator on June 11, 2015. (Doc. 33-8 at 3).  Additionally, Plaintiff received disciplinary charges for the following incidents:  On July 14, 2015, Plaintiff was charged with failure to obey an officer's order to remove his arm from the tray door  (Doc. 33-9).  On August 8, 2015, Plaintiff refused the order to be handcuffed and exit his cell.  (Doc. 33-10).  On August 14, 2015, Plaintiff was charged with assault on an officer for throwing a cup of ice on an officer.  (Doc. 33-11).  On September 9, 2015, Plaintiff was charged with failure to obey an officer's order to enter his cell.  (Doc. 33-13).  On September 10, 2015, Plaintiff was charged with failure to obey an officer's order (when he refused to be handcuffed and continued to attempt to hang himself with a string from a torn sheet, which was tied to the ceiling) and was again placed in a single crisis cell for his safety.  (Doc. 33-12).  On September 16, 2015, Plaintiff was charged with insubordination and threatening an officer.  (Doc. 33-14).  On September 17, 2015, Plaintiff was charged with assault and failure to obey the order of an officer when he refused to remove his arm from the tray door.  (Doc. 33-15).

As to Plaintiff's conclusory allegation that he was housed in a punitive segregation cell with no lights or a working toilet, the undersigned finds Plaintiff has failed to carry his burden of establishing a constitutional claim. (Doc. 48 at 5). While the Eighth Amendment prohibits inhumane prisons, it does not require comfortable ones, *Farmer,* 511 U.S. at 832, and prison conditions constitute cruel and unusual punishment only when they result in the "unquestioned and serious deprivation of basic human needs." *Rhodes*, 452 U.S. at 347. "[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required . . . ." *Thomas v. Bryant* 614 F.3d 1288, 1304, 1306-07 (11th Cir. 2010) (internal citation omitted). This requires establishing the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). To demonstrate a violation of an Eighth Amendment right in a section 1983 prison conditions action, a plaintiff must prove three elements: (1) "a condition of confinement that inflicted unnecessary pain or suffering"; (2) "the defendant's deliberate indifference to that condition;" and (3) "causation." *LaMarca,* 995 F.2d at 1535 (internal quotation marks and citations omitted).

It is unclear from Plaintiff's pleadings, however, whether the complained of conditions lasted one day or for a lengthier time. Either way, such claims do not amount to a constitutional deprivation, as Plaintiff fails to plead any facts suggesting he was ever denied access to sanitary facilities

(which would leave him subjected to uncleanliness, exposure to human waste, or unhygienic means of disposing of his bodily wastes) or functional lighting.

The Eleventh Circuit has long recognized the right "not to be confined . . . in conditions lacking basic sanitation," *Chandler v. Baird*, 926 F.2d 1057, 1065-66 (11th Cir. 1991), but has repeatedly refused to find Eighth Amendment violations based on short term unavailability to functioning plumbing within one's cell.  S*ee, e.g., Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) (affirming dismissal of Eighth Amendment claim based on confinement in cell for eighteen days without properly functioning toilet); *Toney v. Fuqua*, CA 07-00079-CG-B, 2009 U.S. Dist. LEXIS 43036, 2009 WL 1451645, at *3 (S.D. Ala. May 20, 2009) (unpublished) (finding that turning off the water to plaintiff's cell for four days, among other things, did not violated the minimal civilized measure of life's necessities); *Gross v. White*, 2008 U.S. Dist. LEXIS 65432, 2008 WL 2795805, at *9 (M.D. Fla. July 18, 2008) (unpublished) (finding the complaint failed to state a claim based on plaintiff's allegations that, among other things, the water was turned off to his isolation cell for thirty-six hours, which was found to be a minor discomfort in light of the absence of allegations that the prisoner was not deprived of food or liquids), *aff'd*, 340 F. App'x 527 (11th Cir. 2009).

Additionally, Plaintiff's pleadings are completely void of allegations that the deprivations caused him any injury.  *LaMarca*, 995 F.2d at 1539-40 (requiring that injury be connected to a defendant's deliberate indifference to

the constitutionally infirm condition).  Thus, the allegations reflect only that Plaintiff was inconvenienced by not having immediate access to a toilet in his cell (and may have had some discomfort - although none is specifically alleged).  Thus, the claims do not permit the Court to draw a conclusion that Plaintiff was deprived "of the minimal civilized measure to life's necessities" by the lack lighting in his cell or defective plumbing. *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)).

As pleaded, Plaintiff's claims do not have the plausibility necessary for the Court to find that the lack of lighting and toilet in his cell caused a constitutional deprivation  and therefore, this claim is due to be dismissed.

## III.    Conclusion.

Based upon the foregoing reasons, it is recommended that Summary Judgment be **GRANTED** in favor of Defendants Myers, Raybon, and DeSpain, and that Plaintiff's action be **DISMISSED** with prejudice in its entirety.

It is further **ORDERED** that Plaintiff's Amended Motion for Production of Documents (Doc. 48) is **DENIED** for the reasons as set out in the Court's previous order, dated January 24, 2018 (Doc. 47).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this

recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 7th day of March 2018.

/s/ Katherine P. Nelson

_____

**UNITED STATES MAGISTRATE JUDGE**